**LEWIS BRISBOIS BISGAARD & SMITH LLP**
BRIAN C. VANDERHOOF, SB# 248511
  E-Mail: Brian.Vanderhoof@lewisbrisbois.com
JONATHAN WON, SB# 293910
  E-Mail: Jonathan.Won@lewisbrisbois.com
45 Fremont Street, Suite 3000
San Francisco, California 94105
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for Defendant FORD MOTOR COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| STEVEN R. MIRONOWSKI and RUBEN MIRONOWSKI,<br><br>        Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 1:22-cv-00675-JLT-CDB<br><br>**DEFENDANT FORD MOTOR COMPANY'S NOTICE OF MOTION AND MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN PRODUCTION OF CONFIDENTIAL MATERIALS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*(Filed Concurrently with Declarations of Brian Vanderhoof; Jake Doss; and [Proposed] Order)*<br><br>DATE:   April 14, 2023<br>TIME:   10:30 a.m.<br>CRTM:  Bakersfield Courthouse<br><br>Trial Date:     None Set |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 14, 2023, at 10:30 a.m., at the Bakersfield courthouse located at 510 19th Street, Suite 200, Bakersfield, CA. Defendant FORD MOTOR COMPANY ("Ford" or "Defendant") will request the Court to enter Ford's proposed protective order ("Protective Order") applicable to the production of materials pursuant to Plaintiffs', Steven

R. Mironowski and Ruben Mironowski ("Plaintiffs"), Requests for Production of Documents in this matter.

The Motion is based upon good cause shown for granting the relief requested as set forth in the attached Memorandum, the Declarations of Brian Vanderhoof and Jake Doss, and exhibits filed concurrently herewith, as well as such evidence, oral and documentary, as may be presented at the hearing.

DATED: March 9, 2023                     LEWIS BRISBOIS BISGAARD & SMITH LLP

By:  */s/ Brian C. Vanderhoof*
BRIAN C. VANDERHOOF
JONATHAN WON
Attorneys for Defendant FORD MOTOR COMPANY


91428253.1

2

DEFENDANT FORD'S NOTICE OF MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN PRODUCTION OF CONFIDENTIAL MATERIALS; MEMORANDUM OF POINTS AND AUTHORITIES

## **TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION ................................................................................................................1

II.   STATEMENT OF FACTS ..................................................................................................4

     A.   The Lawsuit ..............................................................................................................4

     B.   The Parties Agree That A Protective Order is Warranted, But They Cannot Agree on the Form of the Order. ...............................................................................5

     C.   The Parties' Meet and Confer Efforts .....................................................................6

III.  ARGUMENT .......................................................................................................................6

     A.   Ford's Revisions to the Model Order are Reasonable and do not Prejudice Plaintiffs' Prosecution of this Matter .......................................................................6

     B.   The Entry of a Protective Order Is Necessary to Ensure Reasonable Protection of Confidential Information ...................................................................7

IV.  CONCLUSION .................................................................................................................11



91428253.1   i

DEFENDANT FORD'S NOTICE OF MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN PRODUCTION OF CONFIDENTIAL MATERIALS; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Anderson v. Cryovac*,
   805 F.2d 1 (1st Cir. 1986) .................................................................................................. 7

*Benedict v. Hewlett-Packard Co.*,
   2014 U.S. Dist. LEXIS 7368, 2014 WL 233827 (N.D. Cal. Jan. 21, 2014) ............................. 9

*Bridge C.A.T. Scan Ass'n v. Technicare Corp.*,
   710 F.2d 940 (2d Cir. 1983) ................................................................................................ 7

*Cruz v. Dollar Tree Stores, Inc.*,
   2012 WL 1745539 (N.D. Ca. May 6, 2012) ........................................................................ 6

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) ............................................................................................. 7

*Food Marketing Institute v. Argus Leader Media, d/b/a Argus Media*,
   588 U.S.__, 139 S.Ct. 2356 (2019) ..................................................................................... 9

*McCarthy v. Barnett Bank of Polk Cty.*,
   876 F.2d 89 (11th Cir. 1989) ............................................................................................... 7

*Publicker Indus. v. Cohen*,
   733 F.2d 1059 (3d Cir. 1984) .............................................................................................. 7

*U.S. ex rel. Purcell v. MWI Corp.*,
   209 F.R.D. 21 (D.D.C. 2002) .............................................................................................. 8

*Seattle Times v. Rhinehart*,
   467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) ........................................................... 7

**Statutes**

Magnuson-Moss Warranty Act ................................................................................................. 4

**Court Rules**

FED. R. Civ. P. 26(c)(1)(G) ..................................................................................................... 7

Federal Rule of Civil Procedure 26(c) .................................................................................... 7



# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Ford seeks the entry of its Protective Order to protect Ford's confidential, proprietary and trade secret information and materials, which are the subject of certain discovery requests in this case. Plaintiffs do not dispute the need for a protective order; they only disagree over the form of the protective order that should be entered for use in this case.

Good cause exists to grant Ford's Motion because Ford has a legitimate interest in protecting its confidential information, and Ford's proposed Protective Order is reasonable, targeted, and will allow the parties to continue to litigate this case without disruption. Ford's proposed Protective Order uses the Northern District of California Stipulated Protective Order for Standard Litigation ("ND Model PO") as an initial working draft, and incorporates certain modifications that are essential to protect Ford's interests. This is reasonable and efficient in light of the Northern District's guidance that "the Local Rules do not require the parties to use any of the model protective orders and counsel may stipulate to or move for another form of protective order." (*See,* cand.uscourts.gov/forms/model-protective-orders/).

Ford requests that the Court grant this Motion and enter the Protective Order proposed by Ford.

Ford's requested modifications to the ND Model PO are:

1) Paragraph 1: Adds language to include customer personally identifiable information ("PII") as a category of protected information;

2) Paragraph 2.2: Adds clarifying language that protected information includes documents and also incorporates applicable law governing PII;

3) Paragraph 2.3: Adds language to clarify that support staff are those individuals necessary to assist with prosecution of the litigation. This paragraph is reasonable and necessary to more clearly delineate to whom protected information will be disclosed;

4) Paragraphs 2.4, 2.14, 8 and 9(a): Adds language that allows marking protected documents or information as "Subject to Protective Order" as well as "Confidential." Ford may stamp its protected information "Subject to Protective Order" and use of this language creates uniformity and consistency in Ford's ability to track protected information used in matters;



91428253.1  1

DEFENDANT FORD'S NOTICE OF MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN
PRODUCTION OF CONFIDENTIAL MATERIALS; MEMORANDUM OF POINTS AND AUTHORITIES

5) Paragraph 2.6: Adds language that an expert will be a non-attorney and will not be employed by a competitor of the designating party. This serves two important functions. As to consultants being "non-attorneys," without this modification, the receiving party could designate *any* lawyer as a "consultant" and disclose protected materials to that person, which would, again, obfuscate the purpose of the protective order. Second, language is added that no expert or consultant may be employed by a competitor of the Designating Party or Ford. This is necessary because the greatest benefit to the protective order is to prevent Ford's proprietary and confidential business information from being disclosed to its competitors;

6) Paragraph 2.9: Removes language regarding attorneys being "affiliated" with a law firm appearing on behalf of a party. Without this language, nothing prevents a receiving party from entering into perfunctory agreements with other firms to "affiliate" and receive protected materials, which will obfuscate the protective order by essentially allowing unfettered dissemination of materials to any such firm or its members. Should a receiving party affiliate another law firm to assist in the prosecution of this matter, the counsel of record from that firm may simply agree to and sign the protective order.;

7) Paragraph 2.12: Adds that professional vendors may also produce information;

8) Paragraph 3: Adds language that documents or information could become part of the public domain as a result of mistake, unintentional, or inadvertent production and clarifying that information that enters the public domain could be over objection by the designating party and that all appellate remedies must be exhausted to consider it part of the public domain. This modification is necessary because there may be an instance where protected information is mistakenly, inadvertently or unknowingly disclosed into the public domain but not by the designating party or over the objection of the designating party and prior to the designating party seeking appellate relief. In such instances, the documents or information should not lose their protected status simply because they are disseminated to the public through some act that is not made voluntarily by the designating party;

9) Paragraph 5.1: Clarifies that the Designating Party would be subject to an Order to Show Cause prior to sanctions being issued, if applicable;

10) Paragraph 5.2: Clarifies that the parties can make agreement and also includes protection for mistaken, unintentional, or inadvertent lack of designation;

   a. 5.2(a) and (c): Adds availability to mark "Subject to Protective Order" and also removes language requiring piecemeal designation of protected information within the marginalia of documents;

   b. 5.2(b): Outlines a more detailed procedure for identifying protected information in depositions or hearings;

11) Paragraph 5.3: Removes the word "timely" and also allows for mistaken or unintentional failure to designate and also adds a more detailed procedure for handling situations of a failure to designate;

91428253.1

2

DEFENDANT FORD'S NOTICE OF MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN PRODUCTION OF CONFIDENTIAL MATERIALS; MEMORANDUM OF POINTS AND AUTHORITIES

12) Paragraph 6.2: Adds that the party challenging a designation will simply identify the challenged document by Bates number. Ford expects that most, if not all, documents produced in this matter will be produced with a Bates stamp and providing for specific designation by Bates number will speed up the process of the parties meeting and conferring and also create consistency in this meet and confer;

13) Paragraph 6.3: Proposes slightly longer periods for the parties to resolve issues with respect to challenges before bringing the issue(s) to the Court, clarifies that a Show Cause hearing will be held before sanctions are issued, and includes exhausting appellate proceedings before a challenged document is no longer protected;

14) Paragraph 7.2(e): Adds videographers as individuals to whom protected documents may be provided;

15) Paragraphs 7.2(f) and (g): Adds that a party will provide the designating party reasonable notice before providing protected documents to deposition witnesses or authors or recipients of protected documents and also that authors/recipients will sign the Exhibit A Acknowledgment and Agreement to Be Bound;

16) Paragraph 8: Removes "timely" from a non-party's time to seek a protective order;

17) Paragraph 9(b)(3): Clarifies that it is referring to a "non-party";

18) Paragraph 9(c): Removes the 14-day requirement for a non-party to object or file a motion; Removes "timely;" and, clarifies that the party that must not produce information is the one in receipt of discovery requests;

19) Paragraph 10: Adds that the Receiving Party must also attempt to return, destroy, or delete protected information that was not authorized to be disclosed;

20) Paragraph 11: Outlines a more detailed, efficient, economical and clear claw back procedure for documents, testimony, or information that are inadvertently produced but are protected by an applicable privilege or protection, such as the attorney-client privilege or work-product doctrine. This paragraph is necessary to efficiently set forth that inadvertent production of these materials is not a waiver of privilege or protection and to guide the parties in how to handle the inadvertent production of these materials in an orderly fashion;

21) Paragraph 12.3: Clarifies a 30-day notice requirement or another timeframe agreed to by the parties before protected material is filed;

22) Paragraph 13: Provides clarifying language that deposition or trial exhibits may not be retained and that the parties will further meet and confer about other materials that will be maintained and that the parties reserve the right to object to retention of materials. Retaining exhibits to a deposition or trial will obfuscate the protective order because it allows a party to conceivably attach every protected document to a deposition, trial, or hearing, and then be able to maintain those at the conclusion of the case.

/ / /


91428253.1

3

DEFENDANT FORD'S NOTICE OF MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN PRODUCTION OF CONFIDENTIAL MATERIALS; MEMORANDUM OF POINTS AND AUTHORITIES

In sum, these provisions are necessary and appropriate and should be included in the protective order entered for use in this case.

## II. STATEMENT OF FACTS

### A. The Lawsuit

On May 28, 2019, Plaintiffs Steven R. Mironowski and Ruben Mironowski purchased a new 2019 Ford F-150. (*See* Complaint, ¶ 10.) On June 6, 2022, Plaintiffs filed suit against Ford for breach of express and implied warranties, fraudulent inducement concealment, violations under the Song Beverly Act (the "Act") and violations of the Magnuson-Moss Warranty Act. (*See* Plaintiff's Complaint, *generally*.) Ford denies Plaintiff's claims.

Ford responded to Plaintiff's first set of discovery, which included 16 Interrogatories and 87 Requests for Production. (Vanderhoof Decl., ¶ 4.) In response to these requests, Ford produced hundreds of pages of documents relating to Plaintiff's vehicle.[1] Nevertheless, Plaintiffs recently raised an issue for the first time in connection with the preparation of the Joint Mid-Discovery Report related to "getting emails and reports relating to steps Ford took to reduce the various "symptom codes" in the same make and model as the vehicle in this case." (Dkt. #15, P. 3:12-14.) It is unclear from the Mid-Discovery Report what issues Plaintiffs are referring to, but generally discovery disputes with Plaintiffs' counsel can be resolved if Ford agrees to produce certain confidential, proprietary or trade secret information and materials, including but not limited to the following specific documents:

- Ford's Warranty Policy & Procedure Manual, which is a document that details the policies and procedures that Ford developed over time for use by its dealers in the United States regarding warranty claim diagnosis, submission, allowance and reimbursement;

- Ford's Customer Relationship Center Policies and Procedures, which are developed and used by and for Ford's Customer Relationship Center, which handles, assesses, documents, categorizes and resolves customer concerns that are reported to Ford by

---

[1] These documents include the warranty claim history, service and repair records, the warranty guide, factory invoice, and communications between Plaintiffs and Ford. (Vanderhoof Decl., ¶ 4.)

consumers; and

- Customer contacts received by Ford's call center through Ford's Global Contact Center Technology ("GCCT") application regarding 2019 Ford F-150 vehicles purchased in California, which involve the same symptom codes (if any) as those present in the GCCT records for the subject vehicle, as well as the symptoms experienced by Plaintiffs as reflected in the repair or warranty records for the subject vehicle, subject to a protective order agreeable to Ford .(*See id.,* Ex. A.)

As explained in the Declaration of Ford employee Jake Doss, if the documents described above, over which Ford seeks protection in this Motion, were to enter the public domain, competitors of Ford would gain an understanding of, among other things, the processes, procedures and techniques Ford utilizes to design, develop, investigate and evaluate its products, customer concerns, and repurchase efforts. The uncontrolled dissemination of this information would cause significant competitive harm to Ford at the direct benefit of Ford's competitors. (*See, generally* Declaration of Jake Doss ("Doss Decl.")) For example, a competitor may use Ford's processes for how it classifies customer concerns or how it determines when and whether to elevate a customer concern to improve upon or develop their own customer care techniques or processes. Ford's institutional knowledge is a valuable commodity to Ford, and could be undermined through publication of the aforementioned documents.

As set forth in the Doss Declaration, public disclosure of the documents and information over which Ford seeks protection could cause injury to Ford if such information were made public or otherwise available to those outside of Ford if they are not protected.

**B.     The Parties Agree That A Protective Order is Warranted, But They Cannot Agree on the Form of the Order.**

The parties agree that a protective order is warranted in this case but have been unable to agree on the form of the order. In fact, it was Plaintiffs who first proposed the entry of protective order. (Vanderhoof Decl., ¶ 4.) Despite Ford's good faith efforts to find a mutually agreeable protective order, Plaintiffs continue to reject Ford's proposed Protective Order without providing any meaningful explanation.

### C. The Parties' Meet and Confer Efforts

Ford and Plaintiffs' counsel have attempted in this case and in the past to negotiate a protective order in the numerous cases Plaintiffs' counsel files against Ford. (Vanderhoof Decl., ¶ 5.) In this instance, Plaintiffs' counsel wholesale rejected Ford's revisions to the ND Model "as not necessary." (*Id.* at ¶ 5, Ex. B.) With little exception, the only rationale given for the near blanket rejection was that it is more efficient for *Plaintiffs' counsel* to use a model protective order because they have "hundreds of cases." (*Id.*) Plaintiffs' counsel's rejection gives no consideration to what Ford might require to protect its proprietary, confidential, and trade secret information. Accordingly, the parties have been unable to reach an agreement. (*Id.*)

## III. ARGUMENT

### A. Ford's Revisions to the Model Order are Reasonable and do not Prejudice Plaintiffs' Prosecution of this Matter

There is no dispute that a protective order is necessary here; the parties have simply been unable to reach an agreement as to the form of the protective order to govern the dissemination of Ford's proprietary, commercially sensitive, and confidential business information. Ford maintains that its proposed Protective Order provides the proper protections, and Plaintiffs' proposed version is insufficient. There is nothing in Ford's proposed order that limits Plaintiffs' use of documents and information that are subject to the order **for their own preparation and prosecution of this case**.

The majority of the revisions are simply made to clarify ambiguous terms or language or to add more detailed procedures in an effort to prevent controversy and lead to more orderly resolution of issues so that the parties do not unnecessarily involve the Court. Others are made to substantively protect designated information in a fair and reasonable way as outlined herein.

Specifically as it relates to retention of protected documents and information, significant federal court precedent is clear that a party does not have a right to retain another party's protected information simply because it is received in discovery. Indeed, on-point case law clearly provides that a party's ethical obligations to maintain certain portions of a client's file does not also grant them the right to maintain a party's protected documents following the litigation. *Cruz v. Dollar Tree Stores, Inc.*, 2012 WL 1745539, at *1 (N.D. Ca. May 6, 2012). "[T]he Court is aware of no

authority which has further broadened the rule so as to encompass the confidential information disclosed by an opposing party through discovery." Further, "*it strains credulity to suggest that another party's confidential materials become the property of a client when they are produced in discovery pursuant to a protective order*." *Id.* (emphases added).

### B. The Entry of a Protective Order Is Necessary to Ensure Reasonable Protection of Confidential Information

The Federal Rules of Civil Procedure govern the issuance of protective orders and provide that:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

*See* FED. R. Civ. P. 26(c)(1)(G).

Federal Rule of Civil Procedure 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984). Moreover, Rule 26(c)(1)(G) broadly protects not only trade secrets but also an array of other confidential information. The United States Supreme Court has construed this language to cover more than just trade secrets. In *Federal Open Market Committee of the Federal Reserve System v. Merrill,* a law student sought disclosure from a government agency of it Record of Policy Actions. *See* 443 U.S. 340, 346-47, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979). Although these government records were not trade secrets, the agency argued that they constituted confidential commercial information and were subject to protection under federal case law and procedural rules. *Id*. at 356, 99 S.Ct. 2800. The Court found that the government records were commercial information because they related to buying and selling securities, and they were confidential because the agency kept them secret for a month before disclosure. *Id*. At 361, 99 S.Ct. 2800. The Court wrote that a protective order under Rule 26(c) may be warranted for such confidential commercial information. *Id.* At 357, 99 S.Ct. 2800.

Further, courts consistently allow for the issuance of a protective order for trade secret, proprietary, or confidential information upon a showing of good cause and, in most federal circuit courts, including the 9th Circuit, a showing by the requesting party of specific prejudice or harm. *See, e.g., Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (requiring showing of good cause and specific prejudice or harm if no order is granted); *Anderson v. Cryovac*, 805 F.2d 1, 7 (1st Cir. 1986) (allowing non-sharing protective order for good cause shown); *Bridge C.A.T. Scan Ass'n v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983) (same); *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (good cause is established by demonstrating "a clearly defined and serious injury on the moving party"); *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989) (party seeking protective order has burden of showing good cause); *U.S. ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 28 (D.D.C. 2002) (same).

Ford has a right to protect its confidential business information and trade secrets from public dissemination. Here, Ford attaches the Declaration of Ford employee, Jacob Doss, who attests that the documents at issue contain Ford's confidential business information or consumer PII. Specifically, the Customer Relationship Center Policies and Procedures are confidential to Ford because they reveal Ford's processes and methodologies to identify, document and resolve customer concerns. (Doss Decl. at ¶¶ 8-10.) In this regard, the documents address the specifics of how customer calls and contacts should be handled for a myriad of reasons, including inquiries regarding general information, vehicle concerns, parts, roadside assistance, owner communications, and others, and sets forth the process that each Customer Relationship Center member must follow to process, document, handle and resolve those customer concerns. (*Id.*) Furthermore, the documents address each employee's role and responsibility within the Customer Relationship Center and reveals Ford's process to address, record, resolve, and where necessary, elevate customer concerns using Ford's established processes, including the process through which customer concerns are processed, documented, handled and resolved by Ford. (*Id.*)

The manner in which Ford provides information to its Customer Relationship Center members, how it classifies customer concerns reported to Ford, and how Ford determines when and whether to elevate a concern, repurchase a vehicle, or otherwise communicate with its customers is

91428253.1

8

DEFENDANT FORD'S NOTICE OF MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN PRODUCTION OF CONFIDENTIAL MATERIALS; MEMORANDUM OF POINTS AND AUTHORITIES

1  proprietary to Ford. (*Id.* at ¶¶ 9-10.) In fact, such information and knowledge has been developed
2  by Ford over time and after considerable investments in and by its employees and third-party
3  vendors, which assist Ford with its customer care operations. Publication of these confidential
4  documents would undermine Ford's long-standing investment in its employees and customer care
5  programs because the documents reveal Ford's confidential training process and techniques.
6  Disclosure of documents would benefit a Ford competitor training its own employees on customer
7  communications or in developing its own process for such communications without the need to
8  expend the same time and investment in creating these processes as incurred by Ford.

9  Similarly, Ford's Warranty and Policy Manual contains confidential processes established
10 by Ford for its dealers to receive, execute, and document, warranty and recall repairs in conformity
11 with Ford's defined processes and procedures, as well as the process that Ford dealers follow when
12 submitting warranty reimbursement requests. (Doss Decl. at ¶ 11.) It also includes proprietary
13 discussions of allowances, costs, and reimbursements provided by Ford to its dealers relating to
14 those warranty repairs. (*Id.*) This nearly 400-page manual contains detailed information regarding
15 Ford's warranty claim processes, as well as Ford's methodology for complying with certain state
16 and federal laws and regulations. (*Id.*) Ford's Warranty and Policy Manual is confidential to Ford
17 because it contains detailed information regarding Ford's warranty claim processes, as well as
18 Ford's methodology for complying with certain state and federal laws and regulations. These
19 practices and procedures were developed over time and with significant cost and investment by
20 Ford. (*Id.*) This document is unique to Ford and its authorized dealers and would have value to
21 Ford's competitors if made public, because it would allow Ford's competitors to replicate Ford's
22 warranty policies and procedures, which are an essential component of Ford's business relations
23 with its dealers, at little-to-no cost to such competitors. (*Id.*)

24 Customer contacts received by Ford's call center through Ford's Global Contact Center
25 Technology ("GCCT") application contain confidential personally identifiable information ("PII")
26 of private individuals who are not parties to the present lawsuit and who are unrelated to the issues
27 involved with the subject vehicle or Plaintiffs in this case. Ninth Circuit District Courts are clear
28 that compelling reasons exist to seal PII from public disclosure in the Court record; thus, clearly

defining it as a protected class of information. Indeed, this Court has found compelling reasons to seal personally identifiable information. *See Am. Automobile Ass'n of N. Cal., Nev., & Utah*, 2019 U.S. Dist. LEXIS 42978, 2019 WL 1206748, at *2 (N.D. Cal. Mar. 14, 2019) (finding compelling reasons to seal personally identifiable information, "including names, addresses, phone numbers, and email addresses"); *Benedict v. Hewlett-Packard Co.*, 2014 U.S. Dist. LEXIS 7368, 2014 WL 233827, at *3 (N.D. Cal. Jan. 21, 2014) (granting motion to seal personal information, including a home address, phone number, and email address).

The documents at issue here are deserving of protection because they are Ford's confidential business information and trade secrets and reveal methods and processes that Ford independently developed and has maintained as confidential and secret to Ford, or contain PII of consumers. (*See Food Marketing Institute v. Argus Leader Media, d/b/a Argus Media*, 588 U.S.__, 139 S.Ct. 2356 (2019) ("where commercial or financial information is both customarily and actually treated as private by its owner… the information is 'confidential'" and that "[t]he term 'confidential' meant then, as it does now, 'private' or 'secret.'").) These documents are confidential because Ford derives independent economic value from the information in these materials not being generally known to the public or its competitors. Further, the information contained in these materials is not readily ascertainable by proper means by the public or any other persons who could obtain commercial or economic value from the information's disclosure or use. Ford takes reasonable efforts to protect the secrecy of these materials. Ford has invested incalculable resources to develop this information and it is highly valuable to both Ford and its competitors. (*See, e.g.,* Doss Decl.). Without a Protective Order, there would be unfettered disclosure of this information, which would put Ford at a competitive disadvantage in the automotive industry or reveal personal information of non-parties without their consent. Entry of Ford's Protective Order will facilitate production of these materials in this matter. If disclosed, such information could harm Ford's competitiveness in the automobile market and impair the value of its institutional knowledge. Therefore Ford's Motion should be granted, and the entry of Ford's proposed Protective Order attached as **Exhibit A** to the Declaration of Brian Vanderhoof is appropriate in this matter.

///

## IV. CONCLUSION

Ford seeks entry of its Protective Order for materials that contain confidential, proprietary, and commercially sensitive information, or personally identifiable information of non-party consumers. For the reasons set forth above, there is good cause for the Court to protect Ford's confidential information from improper dissemination, and Ford respectfully requests that this Court enter the proposed Protective Order attached as **Exhibit A.**

DATED: March 9, 2023                LEWIS BRISBOIS BISGAARD & SMITH LLP

By:  */s/ Brian C. Vanderhoof*
BRIAN C. VANDERHOOF
JONATHAN WON
Attorneys for Defendant FORD MOTOR COMPANY



# CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, a true and correct copy of the foregoing **DEFENDANT FORD MOTOR COMPANY'S NOTICE OF MOTION AND MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN PRODUCTION OF CONFIDENTIAL MATERIALS; MEMORANDUM OF POINTS AND AUTHORITIES** was filed electronically with the Clerk of the Court using the CM/ECF System.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties listed on the CM/ECF System. Parties may access this filing through the Court's electronic filing system.

Cora Ruvalcaba



91428253.1

12

DEFENDANT FORD'S NOTICE OF MOTION FOR ENTRY OF PROTECTIVE ORDER TO GOVERN PRODUCTION OF CONFIDENTIAL MATERIALS; MEMORANDUM OF POINTS AND AUTHORITIES