UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN R. MIRONOWSKI and RUBEN MIRONOWSKI,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 1:22-cv-00675-JLT-CDB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER**<br><br>(Doc. 17) |

Pending before the Court is the motion of Defendant Ford Motor Company (Ford) Motion for protective order (Motion), filed March 9, 2023. (Doc. 17). Plaintiffs filed an opposition on March 23, 2023, and Ford replied on April 3, 2023. (Docs. 18, 19). The matter is fully briefed and the Court deems the matter suitable for disposition without need for oral argument. For the reasons stated below, Ford's Motion is GRANTED.

**I. Background**

Plaintiffs filed a complaint against Ford on June 6, 2022. (Doc. 1). Plaintiffs allege claims pursuant to 15 U.S.C. § 2310, The Magnuson-Moss Warranty Act, as well as the Song-Beverly Consumer Warranty Act. Cal. Civil Code §§1790 *et. seq*. These "lemon law" claims arose out of Plaintiffs' warranty contract with Ford relating to their purchase of a 2019 Ford F-150 vehicle. (*Id*. ¶ 9). The Court issued a scheduling order on September 1, 2022. (Doc. 8).

The parties filed a joint mid-discovery status report on January 13, 2023. (Doc. 15). In

the report, Plaintiffs represented to the Court that the parties were in the process of negotiating a protective order. Plaintiffs also advised of possible disputes concerning discovery of Ford's emails and reports related to the steps Ford took to reduce the various "symptom codes" in the same make and model as the vehicle in this case. (*Id*.)

Ford represents that certain of the discovery items Plaintiffs seek constitute confidential, proprietary or trade secret information and materials. Ford identifies at least three documents that would need to be disclosed:

> Ford's Warranty Policy & Procedure Manual, which is a document that details the policies and procedures that Ford developed over time for use by its dealers in the United States regarding warranty claim diagnosis, submission, allowance and reimbursement;
>
> Ford's Customer Relationship Center Policies and Procedures, which are developed and used by and for Ford's Customer Relationship Center, which handles, assesses, documents, categorizes and resolves concerns that are reported to Ford by customers; and
>
> Customer contacts received by Ford's call center through Ford's Global Contact Center Technology ("GCCT") application regarding 2019 Ford F-150 vehicles purchased in California, which involve the same symptom codes (if any) as those present in the GCCT records for the subject vehicle, as well as the symptoms experienced by Plaintiffs as reflected in the repair or warranty records for the subject vehicle. . .

(Doc. 17, p. 9).

However, Ford raises concerns that the uncontrolled dissemination of these documents could harm it competitively. Attached to the Motion is a declaration from Jacob Doss, one of Ford's employees. (Doc. 17-1). Doss' declaration details the confidential nature of each of the three documents outlined above. The declaration also describes that potential prejudice Ford would risk if those confidential processes were exposed to its competitors or the public.

Ford represents that the parties attempted to negotiate a stipulated protective order but were unable to agree on the order's contents. (Doc. 17, p. 6). In response, Plaintiffs argue that Ford has failed to exhaust its meet and confer requirements because the parties are engaged in good faith meet and confer efforts related to a "global" protective order to be used across several lawsuits. (Doc. 18, p. 1). However, Ford represents that the "global" protective order would be

inapplicable because the other lawsuits relate to an allegedly defective component that is not at issue in this case. The Court concludes the parties' interactions adequately meet this District meet/confer requirements under Local Rule 251(b).

**II. Standard of Law**

Federal Rule of Civil Procedure 26(c), which authorizes the Court to enter protective orders, "was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b)." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982). Rule 26(c) states in relevant part that for good cause shown, the court may make an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed R. Civ. P. 26(c). Those reasons also include "requiring that a trade secret . . . confidential research, development, or commercial information not be revealed or be revealed only in a specified way. Fed R. Civ. P. 26(c)(1)(G).

"Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). To satisfy the "good cause" standard, the party seeking a protective order must explain the specific prejudice or harm that will result if the information is not protected. *Id*. at 1211. Generalized statements of harm are not enough. *Beckman Indus, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992); *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). In the case of trade secrets, the moving party must show (a) that the information is a "trade secret or other confidential research, development, or commercial information," and (b) that its disclosure would be harmful to the party's interest in the property. *Nutratech, Inc. v. Syntech (SSPF) Intern., Inc*., 242 F.R.D. 552, 554-55 (C.D. Cal. 2007). Once the moving party makes this showing, the burden shifts to the nonmoving party to show that the information is relevant to a party's claims or defenses or the subject matter of the lawsuit and is necessary to prepare the case for trial. *Id*. *See Edwards v. California Dairies, Inc.*, No. 1:14-mc-00007-SAB, 2014 WL 2465934, at *5 (E.D. Cal. June 2, 2014) (characterizing the shifted burden as "substantial need"); *Stanislaus Food Products Co. v. U.S.S-POSCO Industries*, No. 1:09-cv-

1    00560-LJO-BAM, 2012 WL 6160468, at *5 (E.D. Cal. Dec. 11, 2012).

2    **III. Discussion**

3    The parties agree that a protective order is necessary. However, they disagree as to the extent of protection needed. During negotiations, the parties chose to use a model protective order from the Northern District of California as a starting point. (Doc. 17-4). Ford added revisions to the model protective order which Plaintiffs believed were unnecessary. In their opposition to Ford's Motion, Plaintiffs argue that the Northern District's model protective order is presumptively reasonable. Therefore, Plaintiffs represent, Ford has a burden to show good cause why changes from the model order are needed. *See* Doc. 18 at p. 2 (citing *MasterObjects Inc. v. Google, Inc.*, 2012 WL 2958227, at *2 (N.D. Cal. July 19, 2012)).

Plaintiffs' assertion that Ford must show "good cause" to deviate from what the Northern District of California recognizes as "the presumptively valid" model order is mistaken for two reasons. First, this case was filed in the Eastern District of California. The Local Rules in this District do not recognize or grant "presumptively valid" status to any other district's model protective.

Second, even assuming the Northern District of California's local rules extend preference towards the cited model protective order, the courts preference extends only to protective orders in patent cases. *MasterObjects*, 2012 WL 2958227, at *1. The District Court for the Northern District of California's website cautions: "With the exception of Patent Local Rule 2-2, the Local Rules do not require the parties to use any of the model protective orders and counsel may stipulate to or move for another form or protective order." Model Protective Orders, cand.uscourts.gov/forms/model-protective-orders/ (last visited April 11, 2023). As this case does not involve a patent dispute, Ford's proposed protective order need not be compared to the model order Plaintiffs present as a preferred option. Instead, Ford's proposed order properly may be entered in this case to the extent it is consistent with the balance of interests fulsomely set forth by the court in *Nutratech*, 242 F.R.D. at 554-55 (*supra*).

/ / /

**A. Ford's Particularized Concerns**

   **1. Ford's Warranty Policy & Procedure Manual**

According to Ford, its Warranty and Policy Manual contains confidential processes established by Ford to for use by its dealerships to "receive, execute, and document, warranty and recall repairs." (Doc. 17-1 ¶11). The manual also contains policy discussions of allowances, costs, and reimbursements provided by Ford to tis dealers relating to warranty repairs. Ford asserts that the Warranty Policy & Procedure Manual is confidential because it contains its warranty repair methodology. (*Id.*) The manual was assembled at great cost for Ford, and if made public, its competitors could replicate Ford's warranty policies and procedures — an essential component of its business relations, at minimal cost.

   **2. Ford's Customer Relationship Center Policies and Procedures**

According to Doss, the Customer Relationship Center Policies and Procedures were developed at considerable investment by its employees to assist with its customer care operations. (Doc. 17, p. 8). These policies and procedures contain Ford's confidential training processes and techniques. Like the Warranty and Policy Manual, the policies and procedures could be replicated by a competitor without the need to expend the same time and investment as Ford.

   **3. Ford's Customer Contacts obtained through GCCT**

Finally, Ford avers that its' customer contacts received through its GCCT application contain personally identifiable information of private individuals that are unrelated to this lawsuit. In addition to the cost and replication concerns raised concerning the two documents cited above, Ford asserts that the personally identifiable information contained in its customer contacts have independent compelling reasons for protection. The attached declaration states Ford's personal interest in protecting its customers' personal information in addition to the competitive disadvantages it would experience with the unfettered disclosure of customer information. (Doc. 17-1, p. 4).

Ford has adequately carried its burden to show that these specific documents are of a confidential nature and that their unfettered disclosure would be harmful. *Nutratech*, 242 F.R.D. at 554-55.

As best as this Court can discern, Plaintiffs' opposition is that Ford's proposed protective order is inconvenient and there are more reasonable alternatives available.  This is not a compelling basis on which to oppose entry of a protective order and the Court otherwise fails to see that Ford's proposed protective order would prejudice Plaintiffs' efforts to prosecute their case.

**B. Retention of Deposition and Trial Exhibits**

Plaintiffs object to paragraph 13 of Ford's proposed protective order which would require that all protected materials be either returned to the producing party or destroyed within 60 days. (Doc. 17-3 ¶ 13).  Plaintiffs argue this provision would conflict with their counsel's ethical obligation to retain client files after their representation ends.  California Rule of Professional Conduct 1.16(e)(1).  However, that Rule expressly provides that the obligation is "subject to any applicable protective order, non-disclosure agreement, statute or regulation. . ." Rule 1.16(e)(1); *See United States v. Herron*, 2:18-cr-00058-JAM, 2018 WL 6729953, at *3 (E.D. Cal. Sep. 13, 2018); (noting that California's professional rules "contemplate[] that courts issue protective orders and California attorneys comply with them") *Cruz v. Dollar Stores, Inc.*, 2012 WL 1745539, at *2 (N.D. Cal. May 16, 2012) (same). Plaintiffs' objections to paragraph 13 are without merit.

**IV. Conclusion**

For the reasons discussed above, the Court finds that good cause exists for the issuance of the protective order. IT IS ORDERED that Ford's Motion for a Protective Order (Doc. 17) is GRANTED as follows:

The proposed protective order, which was attached to Ford's motion (Doc. 17-5), is approved, provided that certain modifications are made.[1]  Ford is ordered to file a Word version

///

///

---

[1] The proposed protective order refers to the local rules for the Northern District of California; those references either should be modified or replaced with any applicable local rule of the Eastern District of California.

6

of its proposed order to CDBorders@caed.uscourts.gov. Ford is further directed to refamiliarize itself with the Local Rules of the Eastern District of California and make the appropriate corresponding changes to the proposed protective order.

IT IS SO ORDERED.

Dated: **April 14, 2023**

UNITED STATES MAGISTRATE JUDGE